[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action in two counts was brought to this court on April CT Page 1516 13, 1993 and was tried to the court on November 28, 1995.
The plaintiff alleged that in November 1989 he owned a single family residence on Rita Road in Ridgefield. He decided to convert it from a seasonal use to a year-round use. For this purpose he needed a year-round supply of water to replace the seasonal supply he had. That supply came through a buried seasonal water line and a hose running across land. He contracted with the defendant Rural Water Co., Inc., to install the necessary water line.
In the first count he claims that the charge for said line was in excess of the estimated contract price taking specific issue with an amount for "State and Federal Income Tax Gross-up. " In the second count he claims that the work performed by the defendant constituted upgrading for which the defendant was responsible. The plaintiff seeks damages, attorney's fees and interest.
The court finds the facts which follow herein. The plaintiff contacted the Department of Public Utility Control (DPUC) in June, 1989 after speaking with Steve Polizzi, the President of Rural Water Co. In his letter he stated that he needed the water supply system to be "upgraded." He indicated that Polizzi had told him that the defendant would treat the request as a water main extension and that the cost of such an extension and the running of the service line from the main to the house was the homeowner's responsibility. The plaintiff sought the advice of the DPUC as to what costs he was obligated to pay to upgrade the system. The DPUC replied on July 13, 1989 that the cost of upgrading or installing the water main for year round use was the obligation of the individual homeowners. The letter also stated that if other seasonal customers in the vicinity were to benefit from said installation an equitable cost sharing arrangement could be negotiated among them.
On November 20, 1989 the defendant entered into a Water Main Installation Agreement with the consumer, the Unek Co., the contract executed by Polizzi on behalf of the defendant and Sheltmire on behalf of Unek. Paragraph 1a provided that the consumer was to deposit $10,455 to cover the estimated cost of the purchase and installation as shown on Estimate A.
Paragraph 1b states that the $10,455 figure "is an estimate only and is in no way to be construed as a firm cost." The contract further stated that the defendant would obtain the materials as soon as possible and proceed with the installation. CT Page 1517
The plaintiff requested that Cioffoletti Construction Co., Inc. install the water main. A delay ensued because Cioffoletti was unable to perform the work at that time. On December 18, 1989 Polizzi wrote to Sheltmire to advise him that the work could not be completed until Spring 1990 as the ground was frozen. However, he stated that service would be provided to the plaintiff's property to take care of the plaintiff's "short term need for water service to the house." The more significant message was that because Cioffoletti's fee was $7500 and road repair was a potential need, the estimated cost was $20,960. (Plaintiff's Exhibit 2) The plaintiff who needed to have the water service because he had a tenant for the house paid the bills which resulted from the installation. He paid a total of $14,145.88 which included a tax gross up figure of $4470.68, or 31.1% of the total direct costs. A balance remained of $4699.95 for which the defendant filed a counterclaim in two counts.
The plaintiff did not contest the gross-up figure in Estimate A attached to the contract of November 20, 1989. That figure was $2480, or 31.1% of the total of the installation costs and administrative expenses. The plaintiff had notice, therefore, of a 31.1% gross-up on the first estimate. He did not seek to negotiate a lesser amount. He could have or should have concluded that the amount of the gross-up would increase with any additional cost of the project. He agreed in the contract that the estimate was not to be "construed as a firm cost." Rural Water Co. provided sufficient evidence to prove the fact that its gross-up formula is an option permitted by the DPUC to determine the customer or developer's contribution in aid of construction (CIAC). The plaintiff entered into the contract having been informed that costs were estimated. He failed to show that any of the charges were excessive, unexplained or unjustified.
Cioffoletti's invoice of December 19, 1989 stated that the $7500 amount included as follows: "[T]o dig install 1-4" PVC water main on Rita Rd approx 400'. Road bond to be obtained by Cioffoletti Const Co Inc. All pipe fittings to be supplied by Rural Water Co. Contract price ledge is additional All road worn damages, repair is extra asphalt, saw cut jackhammer work"(sic). When Cioffoletti completed its work, it deducted $600 from its bill for work performed by Rural Water Co. The invoice specified pipe and fittings were supplied by the defendant. The plaintiff did not bear his burden of proving that these items, which appear on the final bill are excessive, namely, the cost of the water CT Page 1518 main $1832, and the cost of valves, valve boxes, and fittings, $1146.95. Furthermore, the plaintiff was apprised that road repair, although covered under the contract, was to be performed by Cioffoletti and would be "extra." The administrative costs varied only by $85 from the original estimate to the final bill. Since the plaintiff wanted Cioffoletti to perform the work, the defendant did not seek competitive bids. The plaintiff cannot now assert that the defendant should have done so.
In the second count the plaintiff alleges that the work performed by the defendant constituted system upgrading which was the obligation of the defendant. The plaintiff cannot prevail on this claim. First, he already knew from the DPUC's reply to his inquiry that upgrading in his case was being treated as similar to the situation of "an individual who owns property with no water service." The letter specifically stated as follows: "[O]ne of the fundamental principles behind the formulation of water main extension regulations is that the patron(s) who will receive the direct benefits of the main extension should pay the costs of installing the water main. It would not be appropriate for all customers of a utility to bear the cost of a main extension which benefits only a few customers.
The plaintiff did not bear his burden of proving that the work performed constituted a system upgrading which the defendant was obligated to provide. Therefore, he owes the defendant the balance of the contract.
For the foregoing reasons, judgment shall enter for the defendant in the amount of $4699.94.
Leheny, J.